IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

DEANNA T.[1]                                    :        CIVIL ACTION
                                                :
        v.                                      :
                                                :
FRANK BISIGNANO, Commissioner                   :
of Social Security[2]                           :        NO.  25-321

## MEMORANDUM AND ORDER

CAROLINE GOLDNER CINQUANTO, U.S.M.J.                    March  26, 2026

Plaintiff seeks review of the Commissioner's decision denying her application for

disability insurance benefits ("DIB").[3]  For the reasons that follow, I conclude that the

decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence

and affirm the Commissioner's decision.

---

[1]Consistent with the practice of this court to protect the privacy interests of plaintiffs in social security cases, I will refer to Plaintiff using her first name and last initial.  See Standing Order – In re:  Party Identification in Social Security Cases (E.D. Pa. June 10, 2024).

[2]Frank Bisignano was appointed Commissioner of Social Security on May 6, 2025.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Bisignano should be substituted as the defendant in this case.  No further action need be taken to continue this suit pursuant to section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

[3]In order to be eligible for DIB, Plaintiff must establish that she became disabled prior to the expiration of her insured status or date last insured ("DLI").  20 C.F.R. § 404.131(b).  Here, Plaintiff's DLI is December 31, 2027.  Tr. at 14, 163.

## I.    PROCEDURAL HISTORY

Plaintiff protectively filed her DIB application on June 30, 2022, alleging disability beginning on February 5, 2022. Tr. at 61, 153-54. She claimed disability as a result of anxiety and depression.[4] Id. at 207. Her application was denied initially on April 20, 2023, id. at 77-78, and again upon reconsideration on August 17, 2023. Id. at 83-84. Plaintiff requested an administrative hearing. Id. at 86. After holding a hearing on January 22, 2024, id. at 30-53, the ALJ issued an unfavorable decision on April 22, 2024. Id. at 14-25. The Appeals Council denied Plaintiff's request for review on November 21, 2024, id. at 1-3, making the ALJ's April 22, 2024 decision the final decision of the Commissioner. 20 C.F.R. § 404.981.

Plaintiff sought review in federal court on January 20, 2025, Doc. 1, and the matter is now fully briefed. Docs. 11, 15-16.[5] The case was originally assigned to my colleague, the Honorable Scott W. Reid, and was reassigned to me. Doc. 12.[6]

---

[4]At the administrative hearing, Plaintiff's hearing counsel stated Plaintiff was alleging disability based "on a combination of symptoms from her major depressive disorder [("MDD")], generalized anxiety disorder [("GAD")], [and] adrenal insufficiency," as well as chronic kidney disease and the side effects of her medications, which were memory loss and central tremors. Tr. at 34-35. As only Plaintiff's anxiety and depression are relevant to this matter, this discrepancy is immaterial.

[5]Plaintiff's Reply is merely a statement that no reply is necessary in light of the response. Doc. 16.

[6]The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). See Standing Order – In Re: Direct Assignment of Social Security Appeals to Magistrate Judges – Extension of Pilot Program (E.D. Pa. Nov. 27, 2020); Docs. 4 & 14.

## II.    <u>LEGAL STANDARD</u>

The court's role on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence.  42 U.S.C. § 405(g); <u>Schaudeck v. Comm'r of Soc. Sec.</u>, 181 F.3d 429, 431 (3d Cir. 1999).  Therefore, the issue in this case is whether there is substantial evidence to support the Commissioner's conclusion that Plaintiff is not disabled.  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and must be "more than a mere scintilla."  <u>Zirnsak v. Colvin</u>, 777 F.3d 607, 610 (3d Cir. 2014) (quoting <u>Rutherford v. Barnhart</u>, 399 F.3d 546, 552 (3d Cir. 2005)); <u>see</u> <u>also</u> <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019) (substantial evidence "means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'") (quoting <u>Consol. Edison Co. v. NLRB</u>, 305 U.S. 197, 229 (1938)).  The court has plenary review of legal issues. <u>Schaudeck</u>, 181 F.3d at 431.

To prove disability, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for . . . not less than twelve months."  42 U.S.C. § 423(d)(1).  The Commissioner employs a five-step process, evaluating:

> 1.    Whether the claimant is currently engaged in substantial gainful activity;
>
> 2.    If not, whether the claimant has a "severe impairment" that significantly limits her physical or mental ability to perform basic work activities that has lasted or is expected to last for a continuous period of 12 months;

> 3.      If so, whether based on the medical evidence, the impairment meets or equals the criteria of an impairment listed in the listing of impairments ("Listings"), 20 C.F.R. pt. 404, subpt. P, app. 1, which results in a presumption of disability;
>
> 4.      If the impairment does not meet or equal the criteria for a listed impairment, whether, despite the severe impairment, the claimant has the residual functional capacity ("RFC") to perform her past work; and
>
> 5.      If the claimant cannot perform her past work, then the final step is to determine whether there is other work in the national economy that the claimant can perform.

See Zirnsak, 777 F.3d at 610; see also 20 C.F.R. § 404.1520(a)(4).  Plaintiff bears the

burden of proof at steps one through four, while the burden shifts to the Commissioner at

the fifth step to establish that the claimant is capable of performing other jobs in the local

and national economies, in light of her age, education, work experience, and RFC.  See

Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007).

## III.    **DISCUSSION**

### A.    **ALJ's Findings and Plaintiff's Claims**

In his April 22, 2024 decision, the ALJ found at step one that Plaintiff had not

engaged in substantial gainful activity since her alleged onset date of February 5, 2022.

Tr. at 16.  At step two, the ALJ found that Plaintiff suffers from the severe impairments

of depression and anxiety disorder.  Id.  At the third step, the ALJ found that Plaintiff

"does not have an impairment or combination of impairments that meets or medically

equals the severity of one of the listed impairments."  Id. at 17.  The ALJ found that

Plaintiff has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> [Plaintiff] is limited to simple tasks in a routine work environment; no more than frequent interaction with supervisors involving superficial relating associated with typical supervisor interactions; can work in close proximity to others, but with only brief, incidental interaction with others and no tandem job tasks requiring cooperation with other workers to complete the task; no interaction with the general public; limited to low stress work, which is defined as routine work with no more than occasional changes in the work; handling and fingering bilaterally is limited to frequent; and limited to occupations where telephones are not required to perform the work.

Id. at 19.  At the fourth step, the ALJ found Plaintiff is not capable of performing her past relevant work as a receptionist and an ophthalmic technician.  Id. at 23.  Based on the Plaintiff's age, education, work experience, and RFC, a vocational expert ("VE") testified that Plaintiff could perform the jobs of stores laborer, housekeeping cleaner, and inspector.  Id. at 24.  As a result, the ALJ found that Plaintiff is not disabled.  Id. at 25.

Plaintiff complains that the ALJ improperly rejected the opinions of Plaintiff's treating psychiatrist, Kanwardeep S. Sethi, M.D., and her therapist, John Miller, L.P.C. ("Therapist Miller").  Doc. 11 at 4-9.  Plaintiff also complains that the ALJ failed to explain the interaction limitations in the RFC.  Id. at 9-12.  Defendant responds that the ALJ's opinion is supported by substantial evidence, that the ALJ properly considered the opinion evidence, and properly discussed Plaintiff's interaction limitations.  Doc. 15 at 6-13.

**B.**    **Plaintiff's Claimed Limitations and Testimony at the Hearing**

Plaintiff was born on September 28, 1975.  Tr. at 153.  Plaintiff completed the twelfth grade and "attempt[ed] some college[, but] did not complete her college education."  Id. at 34; see also id. at 208.  Plaintiff's past relevant work is as a medical receptionist and as an ophthalmic technician.  Id. at 36-37, 237.  Plaintiff was 46 years old on February 5, 2022, her alleged onset date, and 48 years old at the time of the ALJ's decision on April 22, 2024.  Id. at 23, 25, 153.

At the administrative hearing, Plaintiff testified as follows.  Her depression, anxiety, and severe memory loss keep her from working.  Tr. at 38.  When Plaintiff has an anxiety attack, about once a week, it "paralyzes" her, can last for 30 minutes, and wears her out to the point that she sometimes has to lie down.  Id. at 38-40.  Plaintiff finds talking on the telephone triggers her anxiety.  Id. at 46.  In fact, Plaintiff had an anxiety attack during the hearing, which was held by telephone.  Id. at 39.  In addition, "[i]t gets really rough" for Plaintiff to be around people and she has difficulty leaving the house.  Id. at 39.  Plaintiff also suffers from "severe" memory loss and an inability to complete tasks.  Id. at 38.  She described forgetting her train of thought mid-sentence and the need to set alarms for medication reminders, backed up with sticky notes on her phone.  Id. at 42.

Plaintiff testified she suffered negative effects from her medication including a 20 pound weight gain and memory loss.  Tr. at 41.  She also attributes hand, leg, and head

6

tremors to her medication.  Id.  Plaintiff reports her head tremors worsen when she is highly anxious, which occurs 5 out of 7 days a week.  Id. at 41-42.[7]

Plaintiff's depression makes her feel "worthless [with] no purpose in life."  Tr. at 43.  She has no interest in doing things, finds selfcare difficult, feels she is a burden to her husband, and "just basically hate[s] [her]self."  Id.  She has had "fleeting thoughts of [self] harm . . . [m]ore than [she] would like to admit," but was not having such thoughts at the hearing.  Id. at 43-44.  When Plaintiff has such thoughts, she finds it difficult to concentrate.  Id. at 44.  Plaintiff reports she changes her clothes, does her hair, and brushes her teeth once every three days.  Id.  She also isolates herself from anyone outside her home.  Id. at 46.

Plaintiff spends her time sitting on the couch with her dogs, participating in such activities as coloring, scrolling on her phone, and watching television.  Tr. at 44.  Plaintiff is able to do household chores such as cooking and laundry, but described those as "big chore[s]," and said her husband does most of the chores.  Id. at 45.  She may start the laundry, but does not finish it.  Id.

A VE also testified at the administrative hearing.  Tr. at 47-52.  The VE characterized Plaintiff's past work as a medical receptionist as sedentary with a Specific Vocational Preparation level ("SVP") of 4,[8] and her ophthalmic technician job as light

---

[7]In his treatment notes, Dr. Sethi indicated that Plaintiff's neurologist diagnosed Plaintiff "with essential tremor, aggravated by . . .  Prozac."  Tr. at 772.

[8]      SVP levels [in the [Dictionary of Occupational Titles ("DOT")] measure the skill level necessary to perform a particular job.  . . .  SVP levels in the DOT range from level 1

with an SVP of 6.  Id. at 48.   The ALJ asked the VE to consider someone of Plaintiff's age, education, and background, who had no exertional limitations, with the other limitations contained in the ALJ's RFC assessment, see supra at 5.  Id. at 48-50.  The VE testified that such an individual could not perform Plaintiff's past relevant work, but could perform the jobs of stores laborer, housekeeping cleaner, and inspector.  Id. at 49-50.  When Plaintiff's counsel asked about a person being off task 10 percent or 30 percent of the time or being unable to accept instruction or respond appropriately to criticism from supervisors, the VE responded that the person would not be able to maintain employment.  Id. at 50-51.  Based on the VE's testimony, the ALJ found that Plaintiff was not disabled.  Id. at 24-25.

C.    **Medical Evidence Summary**

1.    Treatment Providers[9]

Plaintiff has a history of mental health impairments predating her alleged onset date of February 5, 2022.  During a partial hospitalization at Innovations in February 2022, Plaintiff reported to Carmen Elisa Diaz-Burney, M.D., that she had been

---

to level 9."  . . . Unskilled work corresponds to an SVP level of 1-2; semi-skilled work corresponds to an SVP level of 3-4; and skilled work corresponds to an SVP level of 5-9.

Zirnsak, 777 F.3d at 616 (citing Social Security Regulation ("SSR") 00-4p, "Policy Interpretation Ruling:  Titles II and XVI:  Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions," 2000 WL 1898704, at *3 (Dec. 4, 2000)).

[9]Plaintiff's claims focus on the opinions of her mental health providers and limitations related to her mental health impairments.  Therefore, I will focus my discussion of the evidence on the mental health treatment records, but provide a detailed review to simplify the later discussion.

hospitalized 10 to 12 years prior, when she had suicidal thoughts with a plan, but not intent to follow through with the plan.  Tr. at 634; see also id. at 586 (7/26/22 - history of suicidal gestures with a gun for which she was hospitalized 15 years prior).  Plaintiff was an established patient of Dr. Sethi's at the time of her alleged onset date, with a diagnosis of MDD, recurrent episode, mild.  Id. at 771 (treatment note for Mar. 26, 2021).  On December 6, 2021, just prior to Plaintiff's alleged onset date, during a medication management visit, Dr. Sethi noted that Plaintiff "has been doing very well," with occasional complaints of chest pain that did not last long, which Plaintiff attributed to anxiety.  Id. at 728.  Dr. Sethi noted a normal mental status exam ("MSE").  Id. at 732.  At that time, Plaintiff was taking bupropion, Prozac, and hydroxyzine.[10]  Id. at 727.

On February 7, 2022, Plaintiff reported to Danielle Garzillo, CRNP, ("NP Garzillo"), at St. Luke's Cedar Point Primary Care that her anxiety symptoms had worsened in the prior six months.  Tr. at 303, 723.[11]  Plaintiff complained that she did not "like being around people, doesn't like going out of the house[, has] a hard time concentrating at work, getting the right words out, loses her train of thought, [and has]

---

[10]Bupropion (brand name Wellbutrin), is an antidepressant.  See https://www.drugs.com/bupropion.html.  Prozac (generic fluoxetine) is an antidepressant used to treat MDD.  See https://www.drugs.com/prozac.html.  Hydroxyzine (brand name Atarax) is an antihistamine also used to treat short-term anxiety.  See https://www.drugs.com/hydroxyzine.html (last visited March 17, 2026).

[11]The treatment notes are difficult to follow in some areas because they are not in proper order.  See, e.g., tr. at 302-303 (Page 302 refers to a visit on 11/23/21.  Page 303 is the continuation of the treatment notes from 2/7/22, which begin on 298).  The page numbers under the Administrative Record page number aid in sorting the treatment notes into chronological order.

some short term memory loss." Id. NP Garzillo contacted Dr. Sethi, and referred Plaintiff to Innovations, a partial hospitalization program ("PHP"). Id. at 722. NP Garzillo also provided a note indicating that Plaintiff should be medically excused from work through February 14, 2022, "but likely will be later than that." Id. at 1531.[12]

On February 10, 2022, Plaintiff met with Dr. Diaz-Burney at Innovations. Tr. at 715-21. On MSE, Dr. Diaz-Burney found Plaintiff was "restless and fidgety," with a depressed and anxious mood, and a tearful affect. Id. at 719. Plaintiff admitted "passive/fleeting thoughts of suicide." Id. (emphasis omitted). Plaintiff's concentration was impaired. Id. Dr. Diaz-Burney diagnosed Plaintiff with MDD, recurrent episode mild, and GAD, and admitted Plaintiff to the Innovations program for medication management and group therapy. Id. at 720-21.

Plaintiff started the PHP the next day, participating in group therapy sessions 15 times a week and individual sessions 3 times a week. Tr. at 635. Plaintiff began reporting slight improvements in her depression and anxiety while early in the program, though her MSEs remained positive for anxious and depressed mood. Id. at 698-99 (2/14/2022 – Medication Management Note), 683-85 (2/18/2022 – Medication Management Note). Plaintiff reported steady improvement until discharge, which was

---

[12]Although not included in Dr. Sethi's December 6, 2021 treatment notes, NP Garzillo's notes from February 7, 2022 indicate that Plaintiff was also prescribed gabapentin/Neurontin. Compare tr. at 727 (Dr. Sethi's "Relevant Medications"), with id. at 725 (NP Garzillo's "Current Outpatient Medications"). Gabapentin (brand name Neurontin) is an anticonvulsant also used to treat postherpetic nerve pain. See https://www.drugs.com/gabapentin.html (last visited Mar. 17, 2026).

reflected in normal MSEs.  Id. at 676-78 (2/21/2022 – Medication Management Note), 656-58 (2/28/2022 – Medication Management Note).  The day before her discharge, on March 3, 2022, Plaintiff presented to Shawn O. Aikens, CRNP, for medication management and reported that PHP had "saved [her] life" and that her mood and outlook had improved significantly.  Id.  at 638.  Plaintiff had no abnormal findings on MSE and was discharged on March 4, 2022.  Id. at 639-40.  Plaintiff planned to continue treatment with Dr. Sethi and begin outpatient therapy with Therapist Miller.  Id. at 635.

On March 21, 2022, Plaintiff saw Dr. Sethi with complaints of worsening depression and anxiety.  Tr. at 625-26.  She reported that the thought of returning to work the following week was making her anxious.  Id.  On MSE, Plaintiff had a depressed and anxious mood and constricted affect.  Id.  Dr. Sethi assessed Plaintiff as moderately depressed and anxious and prescribed Abilify in addition to her existing psychiatric medications.[13]  Id. at 628-29.  The following day, Plaintiff presented to NP Garzillo, complaining of "having a very hard time managing anxiety/depressive symptoms."  Id. at 624 (emphasis deleted).  NP Garzillo noted that Plaintiff's main complaint was being stressed "all the time," and Plaintiff was concerned that she was "sliding back" after the PHP.  Id.  However, NP Garzillo noted that Plaintiff was not nervous or anxious.  Id.  NP Garzillo provided a work note to Plaintiff, moving her return to work date from March 29, to May 2, 2022.  Id. at 465, 624.  On April 28, 2022, NP Garzillo noted that after

---

[13]Abilify (generic name aripiprazole) is an antipsychotic medication used to treat MDD.  See https://www.drugs.com/abilify.html (last visited Mar. 11, 2026).

initially making progress after the PHP, Plaintiff was again having difficulty leaving the house.  Id. at 618.

On May 9, 2022, Dr. Sethi noted Plaintiff was feeling apprehensive about returning to work the following month, as Plaintiff reported feeling depressed and anxious, with insomnia, increased appetite, and low energy levels.  Tr. at 613.  An additional stressor was that her mother was in the ICU.  Id.  Plaintiff felt that Abilify had not helped her symptoms.  Id.  Her MSE was normal, except for a depressed and anxious mood.  Id. at 615.  Dr. Sethi wrote that Plaintiff was struggling with depression and anxiety, "in the context of underlying stressors."  Id. at 616.  The doctor increased Plaintiff's dose of Abilify.  Id.

On May 26, 2022, Plaintiff returned to NP Garzillo for follow up.  Tr. at 608-10. Plaintiff's anxiety and depression symptoms were "still not well-controlled" and she remained unable to function at her baseline to complete tasks at home or work, though she continued to attend therapy weekly.  Id. at 609.  Plaintiff's MSE was normal, but for a notation that Plaintiff was nervous and anxious.  Id.  NP Garzillo again extended Plaintiff's time off work to July 11, 2022.  Id. at 448.  On June 20, 2022, Plaintiff presented to NP Garzillo for her annual physical.  Id. at 603.  NP Garzillo noted that Plaintiff started cooking, reading, and walking.  Id. at 604.  Her MSE contained no abnormal findings.  Id. at 607-08.

On July 8, 2022, Plaintiff presented to Dr. Sethi for follow up.  Tr. at 599. Plaintiff reported feeling depressed, hopeless, lacking motivation and energy, sleeping for hours but not feeling rested, and significant weight gain.  Id.  Plaintiff denied any acute

12

stressor other than work.  Id. at 602.  Her MSE was normal except for depressed and anxious mood and tearful affect.  Id. at 601.  Dr. Sethi noted that Plaintiff was on high doses of Prozac and Wellbutrin, which had not been helpful.  Id. at 599.  The addition of Abilify was also ineffective.  Id.  Dr. Sethi wanted Plaintiff to maintain her medications and suggested transcranial magnetic stimulation ("TMS").[14]  Id.  On July 12, 2022, Plaintiff contacted Dr. Sethi's office advising that "she is willing to go back to outpatient program."  Id. at 599.

On July 18, 2022, NP Garzillo found Plaintiff nervous and anxious.  Tr. at 597-98.  Plaintiff reported that "psychiatry gave her options such as NeuroStar, [I]nnovations, or medication changes," [and s]he chose to complete [I]nnovations again."  Id.  On July 26, 2022, Plaintiff completed intake at the PHP with Olga Infante, M.D., and Bethany Wentling, MT-BC, who diagnosed Plaintiff with a severe episode of recurrent MDD, without psychotic features, and anxiety disorder, unspecified type.  Id. at 583.  On intake, Plaintiff reported symptoms of hopelessness; low self-esteem; decreased memory, concentration, and motivation; fidgeting; catastrophic thinking; increased appetite and weight gain; sleep difficulties; and passive death wishes due to recent life changes, work stress, and relationship stress.  Id.  On MSE, the only abnormal finding was her mood,

---

[14]TMS is a "noninvasive technique that applies brief magnetic pulses to the brain through an electromagnetic coil placed near the patient's scalp."  See https://www.merckmanuals.com/professional/pediatrics/psychiatric-disorders-in-children-and-adolescents/depressive-disorders-in-children-and-adolescents?query=TMS#Treatment_v103762628 (last visited Mar. 11, 2026).  TMS is used to treat patients with "severe depression that does not respond to medications or psychotherapy."  See https://www.merckmanuals.com/home/mental-health-disorders/mood-disorders/depression?_gl=1 (last visited Mar. 11, 2026).

described as depressed and "what is the point?"  Id. at 590.  On intake, Plaintiff explained that she would only be able to complete 8 days of treatment due to a personal commitment beginning on August 7, 2022.[15]  Id. at 561.  On August 2, 2022, Plaintiff reported to Flor Mizrahi, M.D., some improvement and a "pretty good" mood.  Id. at 570.  Her MSE had no abnormal findings.  Id.  at 572.  She was discharged on August 5, 2022.  Id. at 552, 558.  She reported improvement since beginning the PHP.  Id. at 553.

Plaintiff followed up with Dr. Sethi on August 19, 2022, when she reported that the PHP was not helpful and that she was "feeling very depressed" and isolating in her room.  Tr. at 548.  Dr. Sethi recommended that she try TMS, given that multiple psychiatric medications had not eliminated her symptoms.  Id.  Her MSE was normal, except for a depressed and anxious mood and a constricted affect.  Id. at 550.  Plaintiff requested a letter to extend her time off work another four weeks, which Dr. Sethi gave her.  Id. at 551.

On August 25, 2022, Plaintiff followed up with NP Garzillo regarding lab results.  Tr. at 543.  At that time, Plaintiff had elevated glucose and began Wegovy.  Id.  NP

---

[15]The ALJ states that Plaintiff "was discharged after a week due to failure to attend appointments."  Tr. at 21.  This is incorrect.  The records make clear that Plaintiff's early discharge was planned due to her prior commitments, that she missed only one day of her intended program, and that she discharged as planned.  Id. at 561.

Garzillo noted that Abilify could be increasing Plaintiff's sugars.  Id. at 544.  Plaintiff's

MSE was normal with a notation that Plaintiff was not nervous or anxious.  Id. at 544-45.

At her next visit with Dr. Sethi, on September 16, 2022, Plaintiff reported "doing

very well" and that her depression had "been much better."  Tr. at 539.  Plaintiff advised

Dr. Sethi that the skills she learned in the PHP had been helpful in decreasing her anxiety

and depression.  Id.  She also reported that "she was let go by her job," was starting long-

term disability, and said that her major source of stress had been "worry about return to

work."  Id.  Her MSE was normal, except for mildly depressed mood.  Id. at 540-41.  Dr.

Sethi wrote "[Plaintiff] overall has been doing better with significant improvement in her

depression [and] anxiety.  I believe [the] major reason for [Plaintiff] feeling much better

is not [having] the stress of returning to work now."  Id. at 541 (emphasis deleted).  Due

to her improvements, Plaintiff did not intend to pursue TMS.  Id. at 539.  Plaintiff

reported similar improvements to NP Garzillo the following month.  Id. at 373-75.

On November 16, 2022, Plaintiff reported to Dr. Sethi that she had not been doing

well for the prior three weeks and attributed increased feelings of depression to the

cessation of her long term disability.  Tr. at 531.  On MSE, Plaintiff had a depressed and

anxious mood and tearful affect.  Id. at 532.  Because Ability may have been contributing

15

to the symptoms of restlessness, Rosemary Kaminski, R.N., from Dr. Sethi's office, added Cogentin to Plaintiff's medications.[16]  Id. at 529-30.

On January 11, 2023, Plaintiff presented to therapist John Miller for intake.[17]  Tr. at 1577.  Plaintiff reported multiple depression and anxiety symptoms, such as difficulty concentrating, feeling worthless, feeling hopeless, and recurrent suicidal ideation.  Id. at 1577-78.  Plaintiff had abnormal findings on MSE of distractibility; blunted intensity; anxious, fearful, depressed, dysphoric, and apathetic mood; and passive suicidal ideation without plan or intent.  Id. at 1581-83.  Therapist Miller recommended that Plaintiff attend therapy once a week.  Id. at 1584.

On January 16, 2023, Plaintiff reported to Dr. Sethi that she felt increased anxiety regarding returning to work, due to her significant difficulties interacting with clients.  Tr. at 1243.  She also reported issues with memory and concentration, which Dr. Sethi opined were secondary to her anxiety and depression.  Id.  Dr. Sethi noted Plaitniff was "shaky" during the meeting and noted other abnormal MSE findings: anxious behavior; depressed, anxious, and dysphoric mood; and tearful affect.  Id. at 1245.  Plaintiff stated that she would feel comfortable returning to work part-time, with the ability to work from

---

[16]Cogentin (generic name benztropine) is used to treat Parkinson's-like symptoms, such as stiffness or tremors, when caused by using certain other medications.  See https://www.drugs.com/mtm/cogentin.html (last visited Mar. 17, 2026).

[17]The first treatment note in the record from Therapist Miller is dated January 11, 2023, and entitled "Initial Clinical Mental Health Assessment and Treatment Plan."  Tr. at 1577.  This is confusing because NP Garzillo's notes indicate that Plaintiff was in weekly therapy in early 2022.  See id. at 624 (3/22/22), 609 (5/26/22).  No other therapist's notes appear in the record.

home, and where she did not have to interact with other people.  Id. at 1246-47.  Dr. Sethi diagnosed Plaintiff with anxiety and MDD, recurrent, severe, without psychosis.  Id. at 1247.  The doctor stated that, "[b]ased on my evaluation with the patient, she feels comfortable going to work in 4 to 6 weeks."  Id.  Dr. Sethi referred Plaintiff to the PHP, increased her Abilify, and offered to increase her dose of gabapentin.  Id. at 1247.

On Plaintiff's admission to the PHP on January 25, 2023, Dr. Diaz-Burney diagnosed Plaintiff with a severe episode of recurrent MDD, without psychotic features, and anxiety disorder.  Tr. at 955.  On MSE, Plaintiff was restless and fidgety, had a depressed and anxious mood, a constructed and tearful affect, impaired concentration, limited insight, and impaired judgment.  Id. at 962.  On February 3, 2023, Karen Burke, CRNP, noted that Plaintiff "continues to improve gradually since beginning PHP."  Id. at 927.  Plaintiff reported her main stressor was her job and that she is seeking long-term disability.  Id.  On MSE, NP Burke noted Plaintiff had a depressed mood, flat affect, and limited insight.  Id. at 929-30.  Three days later, Plaintiff reported to NP Burke that she was having issues with her memory including "driving and not know[ing] where she is."  Id. at 920.  NP Burke planned to reduce Plaintiff's Ability.  Id.  Plaintiff's mood and affect were depressed, but NP Burke noted that Plaintiff's insight and judgment were improving.  Id. at 922-23.  Plaintiff was discharged on February 21, 2023.  Id. at 850.  The discharge notes indicate that Plaintiff's memory issues were part of the symptomatology of her anxiety and depression and she was "given multiple strategies" to deal with her memory issues.  Id. at 851.  Dr. Diaz-Burney noted that "[a]t times, [Plaintiff] did not follow through on treatment recommendations/interventions."  Id. at

17

850. "[O]verall, [Plaintiff] was attempting to do what she could to prevent her from having the possibility of returning to work." Id. at 851.

After Plaintiff's discharge from the PHP, Therapist Miller's treatment notes consist of three Treatment Summaries, which do not provide any indication of Plaintiff's treatment, but offer opinions on Plaintiff's ability to return to the workforce. See tr. at 1585 (3/27/23 – "I do not feel that I have adequate information to judge [Plaintiff's] vocational abilities."), 1586 (6/29/23 – "[Plaintiff's] mental health condition continues to prevent her from engaging in the competitive job market."), 1587 (9/12/23 – "I feel that the depressive symptoms [Plaintiff] is experiencing reduce her ability to engage in vocational activities.").

Plaintiff also followed up with NP Garzillo after her completion of the PHP with complaints of heart burn and memory impairment. Tr. at 1380. Plaintiff's score on the cognitive test administered in the office was normal. Id. NP Garzillo ordered bloodwork. Id. Plaintiff's MSE was normal and NP Garzillo noted that she was not nervous or anxious. Id. at 1381-82.

When Plaintiff followed up with NP Garzillo on March 16, 2023, Plaintiff noted "a small improvement in memory." Tr. at 1354. NP Garzillo explained that the next steps for cognitive impairment included imaging, occupational therapy, and neuropsychiatry referral, which Plaintiff was unsure she wanted to pursue. Id. Plaintiff's MSE was normal and she was not anxious or nervous. Id. at 1355-56. When Plaintiff

18

returned to NP Garzillo for her annual physical on September 13, 2023, she had a normal MSE.  Id. at 1332, 1336.

Dr. Sethi completed a Mental Medical Source Statement on December 1, 2023, in which he noted diagnoses of MDD and GAD.  Tr. at 1544-48.[18]  In the areas of understanding, memory, and concentration, Dr. Sethi assigned a Category 1 (no preclusion of any aspect of the job) to remembering work-like procedures, understanding and remembering and carrying out very short and simple instructions and detailed instructions, maintaining attention for two hour segments, sustaining an ordinary routine without special supervision, and making simple work-related decisions.  Id. at 1546.  Dr. Sethi assigned a Category 2 (precluded for less than 10% of the time) to maintaining regular attendance and being punctual, and working in coordination with or proximity to others without being unduly distracted.  Id.  Dr. Sethi assigned a Category 4 (precluded for more than 20% of the time) to completing a normal workday and workweek without interruption from psychologically based symptoms and performing at a consistent pace.  Id.

With respect to interaction and adaptation, Dr. Sethi indicated that Plaintiff would have no issue with asking simple questions, requesting assistance, or being aware of

---

[18]In the form, Dr. Sethi was asked to categorize the extent to which Plaintiff's mental impairments preclude the performance of work-related activities on a scale from 1 to 5:  Category 1-"Does not preclude performance of any aspect of the job;" Category 2-"Precludes performance for less than 10% of an 8-hour workday;" Category 3-"Precludes performance from 11% to 20% of an 8-hour workday;" Category 4-"Precludes performance for more than 20% of an 8-hour workday;" Category 5-"Precludes all performance in a regular work setting."  Tr. at 1546.

normal hazards.  Tr. at 1547.  Dr. Sethi assigned a Category 2 (precluded less than 10% of the time) to interacting with the public and setting realistic goals and making plans.  Id. Dr. Sethi assigned a Category 3 (precluded 11-20% of the time) to getting along with co-workers or peers, responding appropriately to changes in a routine work setting, and dealing with normal work stress.  Id.  Dr. Sethi assigned Category 4 (precluded more than 20% of the time) to accepting instruction and responding to criticism from supervisors and traveling to unfamiliar places or using public transportation.  Id.  Dr. Sethi also found Plaintiff would be off-task 30% of the time, and would be absent more than 4 days per month.  Id.  at 1548.

Therapist Miller completed the same Mental Medical Source Statement on November 30, 2023.  Tr. at 1572-76.  Therapist Miller found Plaintiff significantly more limited than Dr. Sethi, assigning a Category 2 (precluded less than 10% of the time) to remembering work-like procedures, carrying out very short and simple instructions, interacting with the general public, and being aware of normal hazards.  Id. at 1574. Therapist Miller assigned a Category 3 (precluded 11-20% of the time) to understanding and remembering short and simple, and detailed instructions; carrying out detailed instructions; maintaining regular attendance; making simple work-related decisions; and getting along with co-workers or peers.  Therapist Miller assigned a Category 4 (precluded more than 20% of the time) to maintaining attention for two-hour segments, sustaining an ordinary routine, performing at a consistent pace, asking simple questions or requesting assistance, accepting instructions from and responding appropriately to criticism from supervisors, dealing with normal work stress, and setting realistic goals or

making plans.  Id.  Therapist Miller found Plaintiff was completely precluded from working in coordination with or proximity to others, completing a normal workday and workweek without interruptions from psychologically based symptoms, responding appropriately to changes in a routine work setting, and travelling to unfamiliar places or using public transportation.  Id.

### 2.    State Agency Psychological Consultants

On April 20, 2023, at the initial consideration stage, based on her review of the record, Lori Anne Young, Psy.D., found Plaintiff had mild limitations in her abilities to understand, remember or apply information, and adapt or manage oneself; and moderate limitations in her abilities to interact with others and concentrate, persist, or maintain pace.  Tr. at 56.  Specifically, Dr. Young found Plaintiff was not significantly limited in the abilities to carry out very short and simple instructions and detailed instructions, sustain an ordinary routine without special supervision, make simple work-related decisions, ask simple questions or request assistance, and maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness.  Id. at 58.  Dr. Young found Plaintiff was moderately limited in the abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  Id.

21

On August 18, 2023, at the reconsideration level, Thomas E. Fink, Ph.D., found similar limitations, with mild limitations in the ability to understand, remember, or apply information, and adapt or manage oneself; and moderate limitation in interaction, concentration, persistence, or pace.  Tr. at 65.  Dr. Fink found Plaintiff was not significantly limited in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or in proximity to others without being distracted by them; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes, where Dr. Young found moderate limitation in these abilities.  Compare id. at 58 (Dr. Young), with id. at 65 (Dr. Fink).

### D.   Plaintiff's Claims

#### 1.   Consideration of Opinion Evidence

The first of Plaintiff's claims focuses on the ALJ's consideration of opinion evidence from Dr. Sethi and Therapist Miller.  The ALJ's consideration of medical opinion evidence is governed by regulations which focus on the persuasiveness of each medical opinion.

> We will not defer or give any specific evidentiary weight,
> including controlling weight, to any medical opinion(s) or
> prior administrative medical finding(s), including those from
> your medical sources.

20 C.F.R. § 404.1520c(a).  The regulations list the factors to be utilized in considering medical opinions: supportability, consistency, treatment relationship (including the length

and purpose of the treatment and frequency of examinations), specialization, and other factors including familiarity with other evidence in the record or an understanding of the disability program.  Id. § 404.1520c(c).  The most important of these factors are supportability and consistency, and the regulations require the ALJ to explain these factors, but do not require discussion of the others.  Id. § 404.1520c(b)(2).  The regulations explain that supportability means "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . .  will be."  Id. § 404.1520c(c)(1).  In addition, consistency means "[t]he more consistent a medical opinion(s) . . .  is with the evidence from other medical sources and nonmedical sources . . . , the more persuasive the medical opinion(s) . . . will be."  Id. § 404.1520c(c)(2).

Plaintiff argues that the ALJ's RFC assessment is inconsistent with Dr. Sethi's findings of moderate and marked limitations,[19] and his conclusions that Plaintiff would

---

[19]The regulations do not define the severity of non-exertional impairments in terms of the percentage of time the related limitations would preclude work activity as the forms did that both Dr. Sethi and Therapist Miller completed.  For the purpose of comparison, the regulations provide a five-point scale to assess the severity of non-exertional impairments.

> We evaluate the effects of your mental disorder on each of the four areas of mental functioning based on a five-point rating scale consisting of none, mild, moderate, marked, and extreme limitation.  . . .  Under these listings, the five rating points are defined as follows:
>         a.  No limitation (or none).  You are able to function in this area independently, appropriately, effectively, and on a sustained basis.
>         b.  Mild limitation.  Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

23

be off task 30% of the workday and absent more than 4 days per month.  Doc. 11 at 5-6.

Similarly, Plaintiff argues that the ALJ's RFC assessment is inconsistent with Therapist

Miller's findings of moderate, marked, and extreme limitation, and his conclusions that

Plaintiff would be off task 30% of the workday, absent more than 4 days per month, and

that Plaintiff's symptoms and limitations would increase if she were working full-time.

Id. at 6.  Plaintiff argues that the ALJ's explanation that "these opinions were not

consistent with the evidence as a whole" was insufficient to evaluate the opinions and

provide any meaningful review.  Id.  Specifically, Plaintiff complains that the ALJ's

analysis fails the "reasonable articulation standard."  Id. at 7.  Defendant responds that

the ALJ's decision is "reasonably discernable."  Doc. 15 at 7.

The reasonable articulation standard requires the ALJ to provide sufficient

explanation to "allow a subsequent reviewer or a reviewing court to trace the path of an

adjudicator's reasoning."  82 Fed. Reg. 5844-01, at 5858, 2017 WL 168819 (Jan. 18,

2017).  The regulation governing the consideration of medical opinions does not require

the ALJ to consider the consistency of every opinion or administrative finding, or each

finding contained in a medical opinion or administrative finding.  20 C.F.R. § 404.1520c,

---

> c. Moderate limitation.  Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
> d. Marked limitation.  Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
> e. Extreme limitation.  You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(F)(2).

The Third Circuit has held that an ALJ need not discuss "every tidbit of evidence included in the record." Hur v. Barnhart, 94 F. App'x 130, 133 (3d Cir. 2004). However, the ALJ must do more than "generalize[] to the record 'as a whole,' without any further attempt to articulate an opinion's consistency with the opinions and evidence from other sources." Stellar v. O'Malley, Civ. No. 23-2361, 2024 WL 1520963, at *10 (E.D. Pa. Apr. 5, 2024). Moreover, in determining whether the ALJ properly considered the evidence in making his RFC determination, the court must read the decision as a whole in determining whether the ALJ's decision permitted meaningful review. See Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004); Caruso v. Comm'r of Soc. Sec., 99 F. App'x 376, 379-80 (3d Cir. 2004) (examination of the opinion as a whole permitted meaningful review).

Here, in considering the opinion evidence, the ALJ discussed the State Agency consultants first and then proceeded to discuss the opinions of Dr. Sethi and Therapist Miller. Tr. at 22-23. The ALJ concluded that the State Agency consultants' opinions were persuasive because they were consistent with the record as a whole. Id. at 22. The ALJ proceeded to discuss evidence related to Plaintiff's participation in the PHP and Plaintiff's own reports of "significant improvement" and "feeling improved." Id. (citing Exhs. 2F, 3F, and 4F).[20] The ALJ also noted that Plaintiff often reported "good sleep,

---

[20]I note that the ALJ states that Plaintiff participated in the PHP "twice." Tr. at 22. This is incorrect. Plaintiff participated in the PHP three times, see id. at 633-34 (discharge notes for treatment 2/11/22-3/4/22), 552, 558 (discharge notes for treatment 7/27/22-8/5/22), 850 (discharge notes for treatment 1/25/23-2/21/23). This seems to be a typographical error as the ALJ acknowledged all three PHP admissions in discussing the

improved energy, and concentration and 'doing very well' with her depression being much better.'" Id. (citing Exhs. 2F, 3F, 4F, and 7F).

With respect to the opinions of Dr. Sethi and Therapist Miller, the ALJ found the opinions were not persuasive. Tr. at 22 (Dr. Sethi), 23 (Therapist Miller). After reviewing Dr. Sethi's opinion, the ALJ stated,

> Though Dr. Sethi has a treating relationship with [Plaintiff], his opinion is not consistent with the evidence as a whole in that [Plaintiff's] primary care records are generally unremarkable related to psychiatric symptoms and exam findings though I included more restrictive mental limitations than those indicated by the medical evidence of record as a precaution. (Exhibits 1F and 7F). For these reasons as well as those given to Dr. Young and Dr. Fink's opinion, I find Dr. Sethi's opinion not persuasive.

Id. at 22. In considering Therapist Miller's assessment, the ALJ explained that Therapist Miller's opinion was "not consistent with the evidence as a whole for the reasons given to Dr. Young, Dr. Fink, and Dr. Sethi's opinion[s]." Id. at 23. Plaintiff contends that these analyses were insufficient to allow the reviewing court "'to trace the path' of the ALJ's reasoning or to satisfy itself that the ALJ properly considered the consistency factor, as this provides no insight into how these opinions were not consistent with the record or the exhibits cited." Doc. 11 at 7.

Contrary to Plaintiff's assertion, the ALJ's analysis is sufficient to permit review and his conclusion with respect to both opinions is supported by substantial evidence.

---

medical evidence. See id. at 20-21. As previously noted, the second admission to the PHP was abbreviated due to Plaintiff having a prior engagement in August 2022.

The ALJ reviewed the treatment notes from NP Garzillo, Dr. Sethi, Therapist Miller, and Plaintiff's PHP admissions in great detail before addressing the opinion evidence. Tr. at 20-21. In considering the relevant mental health Listings, the ALJ considered Plaintiff's testimony, statements to her providers, and testing results, concluding that she had mild limitations in understanding, remembering, or applying information; moderate limitations in interacting with others; concentration, persistence, and pace; and adaptation. See id. at 17 (Plaintiff could prepare meals, pay bills, drive, and read; had generally intact memory, concentration, insight, and judgment on testing; could get along with authority; spoke to family on phone for 30 minutes daily; and had no problems with temper).

Moreover, in addressing the opinion evidence directly, the ALJ noted that "[Plaintiff's] primary care records are generally unremarkable related to psychiatric symptoms and exam findings." Tr. at 22. This is an accurate statement of the record. But for a recurrent anxious and depressed mood, NP Garzillo's MSE findings were predominantly normal. See id. at 725 (2/7/22 – NP Garzillo – anxious mood, tearful affect, otherwise normal), 624-25 (3/22/22 – NP Garzillo – normal MSE), 618 (4/28/22 – NP Garzillo – decreased concentration, nervous, anxious), 609-10 (5/26/22 – NP Garzillo – nervous and anxious, otherwise normal), 605, 608 (6/20/22 – NP Garzillo – normal MSE), 597-98 (7/18/22 – NP Garzillo – nervous anxious), 544-45 (8/25/22 – NP Garzillo – normal MSE), 536-37 (10/18/22 – NP Garzillo – normal MSE), 1381-82 (2/23/23 – NP Garzillo – normal MSE), 1355-56 (3/16/23 – NP Garzillo – normal MSE).

Thus, far from generalizing the record as a whole to support his conclusions, the ALJ specifically relied on Plaintiff's own testimony and statements to her providers when

considering the opinion evidence and formulating Plaintiff's RFC assessment.  I find no error in the ALJ's analysis.

2.  Interaction Limitations

Plaintiff also complains that the ALJ failed to explain the different interaction levels and what evidence supports the differing limitations.  Doc. 11 at 9-12.  Plaintiff complains that the social interaction limitations found by the ALJ are not consistent with any of the medical opinion evidence, noting that the limitations do not match those found by Drs. Young and Fink, whose opinions the ALJ found persuasive.  Id. at 9-10.  Defendant responds that the ALJ's social interaction limitations are supported by substantial evidence.  Doc. 15 at 10-12.

In his RFC assessment, the ALJ found that Plaintiff could have "no more than frequent interaction with supervisors," "no interaction with the general public," and she could "work in close proximity to others, but with only brief, incidental interaction with others and no tandem job tasks requiring cooperation with other workers to complete the task."  Tr. at 19.  In comparison, Dr. Young found Plaintiff was moderately limited in her abilities to interact with the public and coworkers and to accept instructions and respond appropriately to criticism from supervisors.  Id. at 58.  Dr. Fink found Plaintiff was moderately limited in her ability to interact with the general public and not significantly limited in her abilities to get along with coworkers and accept instructions and respond appropriately to criticism from supervisors.  Id. at 67.

"There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."  Titterington v. Barnhart, 174

28

F. App'x 6, 11 (3d Cir. 2006).  See also Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 362 (3d Cir. 2011) (holding that each fact incorporated into the RFC assessment need not have been found by a medical expert).  The Third Circuit has explained that "[s]urveying the medical evidence to craft an RFC is part of an ALJ's duties."  Titterington, 174 F. App'x at 11.

Here, as previously explained, the ALJ found that the assessments completed by Dr. Sethi and Therapist Miller were unpersuasive.  However, the ALJ found Plaintiff more limited in social interaction than the State Agency physicians did, despite finding their assessments persuasive.  In his decision, the ALJ explained that he "included more restrictive mental limitations than those indicated by the medical evidence of record as a precaution."  Tr. at 22.  The record supported the ALJ's limitation to no interaction with the general public based on Plaintiff's testimony and statements she made to her doctors.  The ALJ noted that Plaintiff stated that "she had trouble being around people though she had not missed a doctor['s] appointment," and had "difficulty engaging in social activities, getting along with others, and spending time in crowds."  Id. at 17, 19; see also id. at 39 (hearing testimony – "It gets really rough for me to be around people."), 716 (Plaintiff reported to Innovations that she got along with coworkers, but has difficulty being around people.), 1243 (Plaintiff reported to Dr. Sethi having "had significant difficulty interacting with clients" at her past job.).[21]  Similarly, the ALJ noted that

---

[21]I note that in addition to the interaction limitations above, the ALJ also limited Plaintiff "to occupations where telephones are not required to perform the work."  Tr. at 19.  During the hearing, Plaintiff explained that just being on the phone made her

Plaintiff stated she was able to get along with authority.  Id. at 17; see also id. at 234 (Plaintiff's Function Report indicated she got along with authority figures, "Fine."). Thus, although not included in the assessments completed by Drs. Young and Fink, the ALJ crafted the RFC assessment based on the evidence in the record, including Plaintiff's own statements.  I find no error in the ALJ's assessment regarding Plaintiff's abilities to interact with others.

## IV.   CONCLUSION

The ALJ's decision is supported by substantial evidence.  The ALJ properly considered the opinion evidence and adequately explained his reasoning with references to the record.  In addition, the ALJ properly considered the record in determining Plaintiff's interaction limitations, crafting the RFC to address statements made by Plaintiff to the ALJ and to her providers.

An appropriate Order follows.

---

anxious, id. at 39, and the telephonic proceeding was interrupted once because Plaintiff had an increase in anxiety while on the phone.  Id.